### George G. Higgins et al. v. Augusta Drucker.

1. Rule as to Liability of Contractor's Bondsmen.

A surety company, having executed a bond as surety for a building contractor wherein it is provided that the company shall have the right to assume the contract of its principal, upon his failure to perform, and sublet or complete the same at its own election and be subrogated to all the rights and properties

of its principal arising out of his contract, and that all deferred payments and all moneys and properties at that time payable or to become due and payable shall be credited upon any claim of the owner of the building against the company by reason of said bond, is liable on the bond in case the contractor fails to perform if the amount remaining due on the contract together with the penalty named in bond is not sufficient to complete the work under the contract. The liability of the surety company is not determined nor limited by the difference between the penalty named in the bond and the amount which would have been due the original contracter, from the time of abandonment, if he had completed the contract; but where the amount remaining unpaid upon a contract, together with the penalty named in the bond, is more than sufficient to complete the work to be done under the contract, the surety company is entitled to subrogation accordingly.

2. BONDS COMPREHENDING LABOR AND MATERIAL.

A bond setting forth that the principal therein has entered into a "written contract to erect the building, and finish the carpenter work of a certain brick store building, etc.," said contract being made a part there f as fully as if set forth at length therein, requires that the bond be read in connection with the original contract. Therefore, where the original contract provides that the contractor shall "erect, build and finish the carpenter work of a certain brick and stone building" and "furnish at his own proper charge and expense all iron, stone, brick, tile, lime, and timber and all other material not herein before mentioned, and also all work and labor necessary for the erecting, building and furnishing of carpenter work of said building," the surety is bound as well for default in furnishing material for the building to be erected as for default in performing the labor provided for in such contract.

3. SURETY CHARGED WITH KNOWLEDGE OF CONTRACT.

The surety on the bond of a building contractor, the bond being given with the written contract between the contractor and the owner of the building to furnish both labor and material for the erection thereof, and made part of it, must be supposed to have executed the bond with full knowledge of the terms of the contract and it is no defense, upon default of the contractor for both labor and material, that the application for the bond called for carpenter work only and specified the contract price as $4,520, that the building expert examined the specifications and estimated the cost of the labor to be $4,700, and that it was upon such report that the risk was accepted and the bond given.

4. NO DEFENSE THAT CONTRACT WAS FOR INADEQUATE PRICE.

A surety company having had its expert make an estimate of the value of the work which its principal had undertaken to perform, and who might as easily have made an estimate of his entire obligation, and who had the means of knowing his full obligation and his liability to default, and having made the building contract a part of the bond, cannot exempt itself from the payment of the penalty of the bond upon the ground that the bond was obtained by fraud in this, that the payee or her agents knew that the contractor accepted the contract at too low a price under a mistake known to the payee, and it appearing that the architect regarded the bid as too low, which fact was suggested to the contractor, although he still felt confident he had made no mistake.

5. VERDICT OF JURY CONCLUSIVE.

The court having charged, that, if the plaintiff, directly or indirectly, prevented the contractor from continuing the contract, no recovery could be had upon his bond, and the jury having found the fact for the plaintiff, though the evidence was quite strong the other way, the judgment will not be reversed upon review.

6. CONTINUANCE OF TRIAL—NOT PREJUDICIAL—WHEN.

Where during the trial of a case the proceedings are frequently interrupted by reason of persons seeking naturalization before the fall election so that but little time each day was occupied in the actual trial of the case, and the trial was continued several days by consent of parties until after election when it is again taken up and proceeded with without interruption until concluded, the interruptions while unfortunate and annoying to all concerned, no prejudice results to the defendant for which judgment will be reversed, especially not where the trial judge, having personal knowledge thereof, refuses to grant a motion for a new trial upon such grounds.

HEARD ON ERROR.

> *Bentley & Vickery*, for plaintiff in error.
> *Brewer, Cook & McGowan*, for defendant in error.

MARVIN, J.

This petition in error is brought for the purpose of reversing a judgment rendered in favor of Augusta Drucker against George G. Higgins and the United States Fidelity & Guaranty Company. By proper proceedings the case is here, together with a bill of exceptions containing all the evidence introduced in the court below, and we are asked to reverse the judgment on the ground that errors which, it is said, exist, are shown in the record of the case.

The terms "plaintiff" and "defendant" used in this opinion, refer to the parties as they stood in the original action.

The defendant, Higgins, entered into a contract in writing with the plaintiff on February 14, 1898, a copy of which contract is attached to the petition in the case. This contract required of Higgins that for the sum of $4,520 he should "at his own proper charge and expense, well and substantially erect, build and finish the carpenter work of a certain brick and stone building on the east side of Case avenue, corner of Scovill, in Cleveland, Ohio, according to the specifications, drawings and plans made and prepared by" certain architects named in the contract.

A further stipulation to be performed by Higgins is in these words: "Said George G. Higgins for himself, his heirs, executors and administrators, agrees that he will furnish and provide, at his own proper charge and expense, all iron, stone, brick, tile, lime, and timber, and all other material not hereinbefore mentioned, and also all work and labor, necessary for the erecting, building and finishing of carpenter work of said building."

On April, 29, 1898, and after the said Higgins had performed a part of the stipulations on his part to be performed under the contract hereinbefore mentioned, he entered into a bond to the plaintiff in the penal sum of two thousand dollars; the defendant, The United States Fidelity & Guaranty Company, executing said bond as surety for the said Higgins. The following is a quotation from said bond:

"Whereas, said principal has entered into a certain written contract bearing date the 14th day of February, 1898, by and between him and the said Augusta Drucker to erect, built and finish the carpenter work of a certain brick storebuilding on the east side of Case avenue, corner of Scovill street, in the city of Cleveland, Ohio, according to the specifications, drawings and plans made and prepared by George A. Steffens, Paul G. Searles, and Willard Hirsh, said contract being made a part hereof as fully to all intents and purposes and as if set forth at length herein. Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with all the terms, covenants and conditions of said contract on his part to be kept and performed according to its tenor, then this obligation to be null and void, otherwise to be and remain in full force and virtue in law."

Higgins did not complete his contract; but the work having progressed to a given point, he discontinued work under the contract about September 1, 1898. At that time or up to that time he had received in payment upon the contract a little less than four thousand dollars. The

plaintiff proceeded to complete the work, which was to have been done under the contract, at an expense of something like $3,500, and then brought her suit against Higgins and the surety company, and recovered judgment against the company for the sum of $2,196.66, being the amount of the penalty named in the bond, with interest up to the first day of the term of court at which the judgment was rendered.

One of the complaints made of the action of the trial court, is the overruling of the motion for a new trial, on the ground that by reason of interruptions during its progress, the defendants failed to have a fair trial.

The evidence upon this, as shown by affidavits filed in the court below, is to the effect that the trial began on October 26, 1900, which was some ten days before the presidential election of that year. The case was submitted to the jury on November 8, following. The election took place on November 6. Almost immediately upon the beginning of the trial, there were interruptions by reason of the application of persons to the court for naturalization, and the applicants came in great numbers into the court-room and the court stopped the hearing of this case a good many times, and for a considerable time on several such interruptions, devoting such time to the naturalization of these applicants for citizenship; so that but a little time each day was occupied in the actual trial of the case up to and including the first of November. On that day, by reason of these numerous interruptions and of the fact that such interruptions were likely to continue up to the day of the election, counsel on both sides requested the court to postpone the further hearing of the case until November 7, which was accordingly done by the court. The case being taken up on the last named date, proceeded without interruption until the trial was concluded. That these interruptions and delays were most unfortunate and very annoying to the parties in the case as well as to the court, is manifest. That the defendants were prejudiced in the final result by reason of such interruptions, is not so manifest. The trial judge, upon the motion for a new trial, having personal knowledge of the entire situation, did not find that such was the case, and we are not prepared to say that the court was wrong.

Another complaint is made that the court in its charge to the jury gave a wrong construction to the bond given by the surety company. The language of the bond to which attention is now called, reads:

"Provided, * * * that if the said principals shall fail to comply with all the conditions of said contract to such an extent that the same shall be forfeited, then said surety shall have the right and privilege to assume said contract and to sublet or complete same, whichever said surety may elect to do, provided it is done in accordance with said breach.

" Provided, further, that in the event of any breach of the conditions of this bond, said surety shall be subrogated to all the rights and properties of said principal arising out of said contract, and all deferred payments and any and all moneys and properties at that time due and payable, or that may thereafter become due and payable to the said principal, under and by virtue of said contract, shall be credited upon any claim the said Augusta Brucker may make upon said surety because of said surety."

On the part of the plaintiff it is urged that there being about $600 unpaid upon the contract price at the time said Higgins discontinued

the work, that amount should be credited to the defendant, the surety company, thereby reducing the amount to which the plaintiff, if entitled to recover at all, should have been permitted to recover against the surety company. And the court was requested by the surety company to charge:

"That the surety company is entitled to be subrogated to any amount which is due upon the contract and that said amount should be deducted from any sum which the jury find necessary to complete the labor upon this contract, and there is by the allegations of the petition $600 owing to Higgins upon the contract, which should be credited to the surety company upon its liability."

This the court declined to give, but did charge the jury upon this point as follows:

"But said surety company is entitled to be subrogated to any amount which is due upon the contract; that is, $585, and that said amount shall be deducted from any sum which the jury find, from the evidence in this case it was necessary for the plaintiff to actually expend for the purpose of completing the labor and furnishing material provided for in said building contract; and the costs of the labor and material cannot, in any event, be more, of course, than the amount set forth in the exhibit, attached to the petition in this case, that is, the sum of $3,500 in round numbers."

If the contention made by the plaintiff in error is correct, then the plaintiff would have been entitled to only the difference between the penalty named in the bond and the amount that would have been owing to Higgins after the payments already made, if he had completed the contract.

If this position is tenable, then, if Higgins had abandoned his work when he had only performed enough to entitle him to receive one thousand dollars—all of which had been paid to him, the plaintiff would have been entitled to *no* recovery against the surety company because as there would remain unpaid upon the contract price more than $3,500, and the penalty of the bond being but $2,000, the surety company would escape liability altogether.

It can hardly be supposed that such construction was contemplated by either of the parties to this bond. Surely the obligee would not be likely to accept the bond, understanding that such was the true construction to be put upon it. Nor is it likely that a company engaged in this business which this surety company is engaged in, would expect that a bond so to be construed, would be accepted by any one. But it is urged that this is in exact accordance with the language of the bond, as hereinbefore quoted.

It seems to us a fair construction of such bond, is that given by the court in its charge to the jury. The provision is that the "Surety company shall have the right to assume said contract and to sub-let or complete it as the surety may elect; and further, that the surety shall be subrogated to all the rights and properties of the principal."

Up to this point there can be no question that the construction given to the bond by the court was in exact accordance with its terms. But it is said that what follows, to wit: "and all deferred payments and any and all moneys and properties at that time due and payable, or that may thereafter become due and payable, to the said principal * * * shall be credited upon any claim the said Augusta Drucker may make

upon said surety because of said breach," fixes the construction which the surety now seeks to have placed upon the bond.

Strictly there was nothing due the principal at the time he discontinued work under the contract, and strictly nothing thereafter became due and payable to him as he did nothing thereafter under the contract. Of course, if the amount remaining unpaid upon the contract, together with the penalty named in the bond, was more than sufficient to complete the work to be done under the contract, the subrogation to which the surety company was entitled, would have reduced the amount which the plaintiff was entitled to recover against the company, and this was what the court said in effect.

We hold that the court properly refused to charge on this proposition as requested by the surety company, and that the charge given in that regard is correct.

Complaint is further made that the court gave a wrong construction to the bond, in holding that the surety was bound as well for default in furnishing material for the building to be erected, as for default in performing the labor therein provided for. This contention is made because of this language in the bond:

"Whereas said principal has entered into a certain written contract bearing date of February 14, 1898, by and between him and the said Augusta Drucker to erect the building and finish the carpenter work of a certain brick store-building, * * * etc."

But this, for a proper construction, must be read in connection with its context; and this context states that what Higgins has undertaken to do is under a written contract, "said contract being made a part hereof as fully to all intents and purposes as if set forth at length herein."

Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well, truly, and faithfully comply with all the terms, covenants and conditions of said contract on his part to be kept and performed according to its tenor, then this obligation to be null and void; otherwise to be and remain in full force and virtue in law."

Suppose this contract made by Higgins with Drucker had been set out in full in the bond, it would seem a very strained construction to say that the only thing which the surety company bound itself for was the completion of the *labor* on the part of Higgins to be performed. And remembering that "said contract being made a part hereof as fully to all intents and purposes as if set forth at length herein," it seems clear that the court was right in refusing to charge upon this point as requested by the surety company, and in charging the jury in these words:

"If you find the plaintiff is entitled to a verdict in this case as against the surety company, she is entitled to recover for both the costs of labor and material for the completion of said carpenter work provided for in said building contract."

It is said that the application for the bond called for carpenter work only, and specified the contract price as $4,520; that the building expert of the surety company examined the specifications and estimated the cost of the *labor only* to be $4,700, and so reported to the surety, and that it was upon this report that the risk was approved and the bond given; but the bond was given with the written contract between Drucker and Higgins made a part of it; and the surety company must be supposed to have executed this bond with full knowledge of what that contract was.

  It is further urged on the part of the plaintiff in error, that the bond was obtained from it by fraud in this : that when the bond was accepted, it was known to Drucker or her agents that Higgins had accepted the contract at a price much below that which would be necessary to complete the contract ; and that it withheld such knowledge from the surety company ; that Higgins made his bid under a mistake, and that this was known to Drucker. There is evidence in the record tending to show that the architect of Drucker regarded Higgins' bid as much too low and that he called the attention of Higgins to the fact that his bid was low, but that Higgins felt confident that he had made no mistake. Besides this, the surety company had full opportunity to know what Higgins had undertaken to do. The contract was made a part of the bond and should have been examined by the surety company. It had its expert make an estimate of the value of the work which Higgins had undertaken to perform and it might as easily have had an estimate made of the entire obligation which Higgins had assumed, as of this particular part of it ; in short, it had the means of knowing *everything* which Higgins had undertaken to do, and could as well have determined as Drucker could, whether Higgins was liable to default.

  It is further urged that the plaintiff should not be permitted to recover because, it is said, she put an end to the performance of the contract on the part of Higgins by ordering the discontinuance of the work. The evidence on this point is conflicting, and the court said to the jury in regard to it : "That if the plaintiff by her conduct and by her directions and orders, prevented the defendant Higgins and his employes from continuing the work upon the contract, no recovery can be had upon the bond in this action as against either one of these defendants."

  This was given upon the request of the defendants, and properly stated the law. The jury found the fact for the plaintiff, and, though the evidence was quite strong the other way, we are not prepared to say that the judgment should be reversed on that account.

  Without going further into detail, we find nothing in this **record** justifying a reversal of the judgment, and the same is affirmed.